The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon. Welcome to the Ninth Circuit Court of Appeals and to the James Browning Courthouse. It's a pleasure to have you all here today. This is the time set for the case of Claudia Elena Montejo-Gonzalez v. Pamela Bondi. Counsel is ready to proceed. You may come forward. Good afternoon, Your Honors. My name is Catherine Munyon, and I am here representing Petitioners Claudia Elena Montejo-Gonzalez and her two children. I'd like to reserve 10 minutes for rebuttal. This Court should affirm the totality of the circumstances tasked that it, just like its sister circuits and the agency, has applied for decades, and that the panel correctly applied here to find petitioners eligible for relief. The government sought rehearing based on a misrepresented view of the panel's holding, that the panel found petitioners at fault for their delayed removal, but nonetheless eligible for relief solely because of its results. But that's not what the panel did. It recognized that the petitioners were not at fault, but that their delayed arrival was instead due to the two extraordinary car accidents that largely blocked their attempts to get to court that morning. Counsel, I wanted to start with the statutory language. The statute gives, you know, this would be a much easier case if it didn't have a definition of exceptional circumstances. We see statutes like that all the time, and that gives judges a lot more discretion in how to apply that. But here there's a definition of exceptional circumstances, and it says nothing less compelling than battery, death, serious injury. Well, Your Honor, I think the statutory language, in fact, supports the inquiry that the panel applied. But would you agree with me that that's what the statute says, that it can't be a reason that is less compelling than death, injury, or illness? Yes, but I think the key question is what does less compelling mean? That's fine. And you think that traffic is not less compelling. Traffic delays are not less compelling than injury, death. I think what's relevant under the statute as this... You didn't answer my question. I understand you have a different... And I want to hear your argument. I mean, I really appreciate the briefs that you guys put in. It's very helpful on a difficult issue. But do you agree with me, or do you agree that the petitioner, that your client here faced a circumstance that was less compelling than death, injury, or illness? No. This court has previously said in Arradondo... But it has nothing to do with what our court previously said. We're on bonk right now. Part of the panel's problem was it was dealing with some of our precedent. How was traffic delay... How is it as compelling as death, injury, or illness? What renders a circumstance compelling is the degree of impediment to arrival, not the emotional impact on the petitioner. That's what this court previously recognized under Arradondo. I don't know what emotional impact has anything to do with it. My question is how is... I know you don't want to answer my question, but I've asked it 10 times. How is death, bodily injury, or illness... How is this not less compelling, a traffic delay? Because traffic that makes it impossible to get to court, that closes down the highway, is something that renders the circumstances beyond the petitioner's control. Is your answer to Judge Nelson's question that you're looking to compelling as something that prevents someone to get to the hearing? Yes. Okay. So before... I think this antecedent question for me before we get to the sort of the quality of the circumstance is causation, because I read the statute to say that the circumstances have to be circumstances that prevented the petitioner from appearing at her hearing. Do you agree with that? Yes, I do. Okay. So before we get to the quality, and then I'm going to circle back, but before we get to the quality of the circumstance, would you agree that anything that happens after the hearing couldn't have prevented her from getting to the hearing? I agree that there is a requirement under the statute for a causal reason for the failure to attend the hearing. Okay. And that the inquiry focuses on that causal reason. So my question was, if it's something... If it's a circumstance that arises after the hearing, do you agree that it's not a cause of her failure to appear? I agree that... I... You don't know how it could be, and so I'm... Yes. I agree that something that occurs entirely after the failure to appear isn't a causal circumstance. I do think that things the petitioner is aware of before the failure to appear can be relevant in assessing the causal circumstance and how exceptional the failure to appear was. But that's because you're talking about the motivation, perhaps, or diligence. Is that what you're saying? I'm talking about motivation, diligence, and the petitioner's awareness of the merits of their case and the potential results for removal. A petitioner... Can I... Can I... But it's... But I'm a commuter, so this is, like, every day of my life. There's... You know, and so I'm hard... I'm hard-pressed to see how that's extraordinary. I hit two accidents practically every day. Well, Judge Callahan, I don't want to make representations about your commute, but I want to distinguish here and push back a little bit on the record. The record is clear that this wasn't ordinary traffic. These are really extraordinary accidents that were causing really, really unusual highway delays. Counsel, isn't the totality of circumstances test in existence? The reason we utilize it is because many of these questions that would cause you standing here before us today to make determinations or statements in response to some of my colleagues' questions about what might constitute per se exceptional or unexceptional circumstances is difficult to do. So I'm going to ask you a hypothetical. If a petitioner's house caught on fire, you might say that that is per se exceptional or in response to Judge Nelson's question, something that rises to the level of something extraordinary like the death of a family member or illness. But when doing the totality of circumstances analysis that our court has previously indicated at the test, and as you mentioned, tracks what the agency itself says, if you were to consider that the petitioner never planned to go to the hearing or never arranged for transportation to go to the hearing or failed to appear eventually or in prior hearings that they might have had, what would you say is the ultimate determination about exceptional circumstances in a case like that? So you have a house fire, but many facts that show, for example, that there was no motive or diligence to appear at the hearing. Well, the petitioner would have to make a showing that the house fire had some sort of causal connection to their non-appearance. And I think all the factors that Your Honor is mentioning would be relevant and necessary for the agency to assess in considering whether the petitioner's non-appearance was truly exceptional and whether the cause was exceptional in those circumstances. As Your Honor referenced, the statute very much requires an individualized inquiry into the circumstances of the petitioner. There are certain listed examples, but not even the listed examples are necessarily grounds for non-attendance. You have to examine them within the context of a particular petitioner's circumstances. Take for an example a petitioner whose parent has died, which is a statutory listed example. You might consider if it's an adult petitioner who had an estranged parent die, it's very unlikely that that event, even if emotionally resonant in some ways, would have a causal connection for a failure not to attend. So it's absolutely relevant under the statute and necessary for the agency to consider a petitioner's general diligence and the merits of their claim. I want to make sure I understand your argument, though. Go ahead. The standard of review here is abuse of discretion. So we would have to find that the BIA acted arbitrarily, irrationally, contrary to law, and based on the evidence that was before the agency. Her declaration says the main reason I did not appear is because there was heavy traffic on the way to court. She miscalculated how much time it would take to arrive at court. You know, she realizes it was her fault, and she should have arranged for proper transportation. Based on this, how can we find that what the BIA did here was arbitrary or irrational? And would this have given them enough facts to distinguish Sharma and Arradondo? Yes, I think there were, and I have two responses. First, I would like to point your honor to a few additional things in the record. We have petitioner's declaration that says there were two major traffic accidents. In addition, she included a Spanish-language news article documenting how extraordinary the conditions were that morning. That's at C.A.R. 100. And we have her photos of the traffic at C.A.R. 101 to 108. Do we have any indication about whether those pictures or that update, I think you're talking about the page 100 Spanish announcement, whether that was unusual traffic for the area? I think it was unusual traffic for the area. You know, it is making the news that morning, as the article attests. And as the article that we mentioned in our briefing references, these were really unusual accidents. We have a series of not one, but two accidents, first involving a semi-truck and occurring at 430 in the morning. I think the article in your brief does help, but I don't think it was before the agency. Is that right? It was not before the agency, but it does corroborate what's in petitioner's affidavit, that there were two major car accidents. And she did include this Spanish-language article that was also documenting that we have, you know, newsworthy traffic that morning. It's not an ordinary— What do we do with the fact here that by your client's own admission in her declaration, she didn't really leave herself any leeway for anything to happen outside of what I think she thought was ordinary traffic. She says that she thought it would take 90 minutes to get there, and it seems like she left 105 minutes. So I just wonder what we do with that. It seems like she didn't leave room for anything beyond the regular road conditions that she was going to encounter. So, Judge Thomas, I don't think there's any dispute that she would have arrived in time for the — to be deemed to have appeared at the hearing absent these two extraordinary car accidents. Under this Court's precedent in Perez v. Mukasey and Gerazzano v. INS, she would have been deemed to appear as long as she got there while the I.J. was still on the  And the declaration states at Sierra 35 that she arrived just after the I.J. had left the bench. The clerks were still there. Everything was still in place, but the I.J. was just off the bench. So, but for these two extraordinary accidents, she would have been there. How late was she? It was — she arrived at 10.30, so two hours after the 8.30 time. But, of course, this is an initial — And allowed — I'm trying to make sure that I — I'm counting the timing the way you are. If she had allowed more time, as many people would have, let's say she had allowed an hour, is it your position she still would have been an hour late? I think it's hard to tell based on the record, but — Why is that? I thought you just told me she got there two hours late. She got there two hours late, but this is a situation where we know there was extraordinary traffic all morning. There were lane closures all morning. So I'm not sure you're following my question. My question is, if she had timed this so that she had allowed herself an hour, is it correct that she still would have been an hour late? Oh, if she had allowed only an hour? That's my question. Yes. If she allowed only an hour to get there as opposed to — No. No, counsel. If she had timed this so she — rather than having 15 minutes, as Judge Thomas just talked with you about, if she had timed this so she'd have an hour of leeway, wouldn't she still have been an hour late? She still would have been late if she had — Judge, if she had left two hours earlier, say if she had left at 4.45 in the morning instead of 6.45 in the morning, she still would have not made it in time for her hearing,  Yes, absolutely. This is traffic that began at 4.30 in the morning. So can you address Judge Koh's question I think that maybe you were getting at but didn't make it to, which is, under the standard that we're reviewing, the agency decision, it's an abuse of discretion. How do we find that this was an abuse of discretion? So the agency abuses its discretion if it acts arbitrarily, and it also abuses its discretion if it neglects to consider a significant factor that appropriately bears on the discretionary decision. That's Mario Robles v. Lynch in the First Circuit, which the government cites with approval as well. If we look at the agency decision at CAR 4 through 5, we see that the agency is not undertaking the detailed analysis that we're undertaking in our discussion here. The agency simply says this was ordinary traffic, and therefore it cannot qualify. There's no analysis of the specific Didn't they do more than that? Didn't they say, I think they said that. They had considered her declaration, yes? It referenced the facts in her declaration, but it did not engage in an analysis of her diligent efforts to attend, the fact that she appeared in court, the fact that she They state on page 4 in the footnote that she had only left herself 15 minutes to park and go through courthouse security, notwithstanding any traffic delays. I don't see why that isn't really their analysis of whether she was diligent. I mean, maybe it would be a different case if she had left at 4.30 in the morning and therefore left herself two hours or three hours to get to court, but here she's only leaving 15 minutes. So they've gone beyond. I think they've gone beyond what you're saying. They do need some analysis. I think that's questionable. If you look at the discussion of Arsing, that's in the last paragraph on page 4, it says that that's a decision requiring consideration of diligence and exhibiting the full consideration of factors relevant, and it says that's irrelevant because it was her first hearing. She was not mistaken regarding the hearing time, and she's not demonstrated that she would have been entitled to relief according to the agency. So the agency is simply dismissing that. It's not considering her record of previous attendance at all DHS meetings and full compliance with DHS requirements. It's not considering the fact that she researched the time that the traffic would take to the best of her ability. It's not considering the fact that unlike the petitioners in Sharma and Arradondo, she was not familiar with the area and she was relying on someone else for a ride, unlike those petitioners. I'm concerned about the, going back to what Judge Nelson was talking about, the further away we get from the statute, that concerns me. And the text of the statute does not mention motive or unconscionable result. What's your best argument based on the text of the statute that we can look to either motive or unconscionable result in assessing the motion to reopen? So the statute defines exceptional circumstances as circumstances beyond the control of a non-citizen. And I think look, so to determine whether something... Hold on, hold on counsel. Is that really what it defines? It defines, there's two prongs to exceptional circumstances. The first is the quality of the delay. And then the second is that it has to be beyond circumstances. I don't think, I mean, you just read the statute as if, as long as it's beyond circumstances, you're satisfied. Is that what you believe? No. So your honor is right that it does list certain enumerated examples. It says such as those examples. So it's not a defined list. It is open to additional elements. Hold on. Again, could you read the statute for me? Yes. The term exceptional circumstances refers to exceptional circumstances such as battery or extreme cruelty, serious illness, serious illness or death, but not including less compelling circumstances beyond the control of the alien. Last part. I mean, that's what you keep trying to avoid. And that's fine. But it says, but not less compelling. Again, your case would be a lot easier if the definition were different. And we have tons of examples where judges have a lot of discretion here. But it says, but not less compelling. So, I mean, I don't want to repeat our first colloquy. So go ahead and answer the question. But I just, I think you excised part of the statute out. And I want to make sure we're talking about the statutory term. Of course, your honor. And I do not mean to excise any of the statute out. I think not less than compelling, as I said earlier, the relevant inquiry is whether it's a similarly severe impediment to arrival. Counsel, on this point, do you mean, I'm not trying to put words in your mouth, but we've talked about causation as a threshold question, and then there's these circumstances, right, that have to have prevented her from getting there. And to go, just to follow up on Judge Nelson's point, I think you're saying that you view these circumstances, these two car accidents as, I'll just use the phrase, rising to the level of exceptional under the statute. And what the statute gives us is several examples. It's a non-exhaustive list, right? I think you're saying that one of the characteristics of each of those examples is beyond her control. But is there, are there any other characteristics that are common to those examples in the statute that we should be looking to? They're beyond the person's control, and I think it's relevant that they can't be overcome with diligence necessarily. And they are likely rare within an individual petitioner's experience. I have problems with the fact that I think to myself, well, let's say she had arrived on time, and I wore the IJ and I heard the case. Of what I know of the facts, it seems like she wouldn't have prevailed. I feel like I would have denied the petition. So if that's my conclusion, how does that factor in? So, first of all, I think this Court's precedent is correct in saying that, while the merits of a petitioner's claim are relevant in considering their failure to appear and whether or not it was exceptional, it's not necessary to show that you have a prima facie case for relief. There is, of course, this Court has recognized and the Supreme Court has affirmed a due process right to be heard in removal proceedings. So we are looking, and the statutory language points us to look at whether the failure to appear was voluntary in some sense. So that's my first response. Then my second response to Your Honor is the immigration court here dismissed petitioner's claim for asylum as merely concerning ordinary crime. But petitioner's assertion was that she was targeted for her refusal to join a gang and become a gang girlfriend. This Court has recognized in pure Bok v. Holder that opposition to gang membership may constitute a particular social group. And so while the IJ did, in fact, state that he was troubled by no showing of a prima Did the IJ address the minor children's claims in any way? The IJ did not address the minor children's claims. And the BIA addressed whether there was a prima facie case for relief aid, but it did not separately assess the minor petitioners in terms of whether they had any fault for the delayed arrival. And how, if at all, do we consider the claims of the minors when considering the totality of circumstances? The claims of the minors absolutely have to be considered within the totality of the circumstances. Of course, the minors have their own due process right to be heard at hearings. Their claims for asylum are tied to their mother's claims. They are derivative beneficiaries. Those claims be considered as part of the overall motive? I'm asking this because, as the author of the three-judge panel decision, we were bound by the decision in Hernandez-Golan, which very clearly indicated that this unconscionable result factor is sort of a separate analysis, perhaps a separate analysis outside of the totality of circumstances. That's how we approached it. But as we sit on bunk, I think it is important to think about whether or not the statute allows for a consideration of an unconscionable result, which is really different than an exceptional circumstance that causes a petitioner to miss their hearing. And so I'm interested to know whether or not consideration of, say, the minor children's claims might go to the overall motive or diligence that the petitioner might have in appearing at the hearing, but for this circumstance that was beyond her control. I agree with that entirely, Your Honor. I think the minor petitioner's claims could really wholly be considered under motive and properly considered under motive. This is a petitioner who was very motivated to appear with two children whose claims were at stake. So I see no problem with the court considering that under the headline of motive. Perhaps there are other cases. Your briefs argue that this should be sort of a separate factor, and sort of that's why I'm asking you about it now, which is if understanding that there's some tension there with the statutory language, you see it's still really a distinction without a difference because it can be considered as part of the totality. I think it is in many ways a distinction without a difference because it can be considered in part of the totality and as a part of motive, and notably the government hasn't disputed that. The government's acknowledged that the eligibility for relief may be very relevant to consider under motive. That's 10 through 11 of the government supplemental brief and 4 to 5 of the reply brief. I see we are eating into my room. Can I ask a follow-up question on I think your answer to Judge Coe about this sort of list of things that you think the agency didn't consider? So we were just talking about the merits of the children's claim. I think you also talked about the check-ins that she was diligent about appearing in these check-ins before this hearing. Are those factors about motive sort of credibility factors or are they playing some other role? So I'm just wondering if they're only going to, do we believe her story about what she did? My question is, is there any indication here that the agency didn't believe her about what she did? Do we need to have a credibility question about what she did for motive to come in or does it come in some other way? I think it comes in some other way. I don't think there needs to be a credibility question. You know, the law is clear that you generally take the facts in the affidavit as true since there's no hearing. That's Sting v. Garland and Arredondo mentions that as well. But even if you're taking the facts and the affidavit is true, the agency still needs to make an independent assessment of whether those facts rise to the level of exceptional circumstances. But I guess if you believe, okay, so this is my question about the application to the facts here and what the agency decided here. Do you think that the agency didn't believe her affidavit? I mean, if the agency just credited the affidavit, then what were they needing to consider that they didn't consider? The agency needed to make its own assessment of her diligence and her motives to appearing and whether or not.  If her diligence is, if the question is a causal question and they believe the cause of what she says, why do they need to still consider diligence? So I think it's relevant in considering whether the circumstances are exceptional. Isn't it relevant to considering, isn't it circumstantial evidence of whether they're beyond her control, whether she really couldn't help it? Yes, I agree. Even assuming that that's so, how do we know that the IJ didn't engage in that consideration? It seemed like the IJ was well aware of the case law that's applicable to analyzing the situation, considered her declaration and addressed it fully. So how do we know? We don't require IJs to lay out every single detail in the way that you're suggesting in your argument today. How would you respond to that? Respectfully, I would push back on that because the bottom line decision that we get from the agency is that this is controlled and similar to Sharma and Arradondo. But here we have petitioners who engaged in much more diligent efforts to get to court in Sharma and Arradondo. Were there any factors in Arradondo that weighed in in favor of motive or diligence? In Arradondo, the petitioner didn't persist to get to the hearing, correct? The petitioner did not persist to get to the hearing in Arradondo. The petitioner had mechanical difficulty with her car that was outside of her control, the court said. But instead, the petitioner had both time and money to get to court at that point and simply chose not to. How is Arradondo a case that would be appropriate to be cited had the agency considered the totality since it's a case that is one that is purely about a car issue without any other extenuating factors that would need to be considered? I think the agency's reliance on Arradondo shows the deficiency of the agency's consideration here and its failure to consider the actual circumstances of these petitioners' case. Now, I don't want to cut off the court's inquiry, but I would like to reserve a few minutes for rebuttal, and I see I only have three minutes left. I have one question, though. One of the criticisms in the dissent of the opinion that has been vacated is that it's requiring a punch list of items. What's your view? Do you think that it's error if the BIA doesn't consider each factor in a standalone way, motive, unconscionable result, or is it a more fluid analysis that in certain circumstances these factors may be relevant and have to be considered and have to be discussed and others they don't? I disagree with the dissent's criticism of the majority opinion there. I don't think it sets up a punch list of factors. Inherent in the nature of a totality of the circumstances test is the idea that sometimes different circumstances will be relevant in different situations and be of more weight for consideration. But there was an absence in any reasoned decision here. I mean, there was a citation to Arradondo talking about a traffic jam, but in terms of a reasoned decision as to why that was insufficient or not an extraordinary circumstance, there was not that. In the agency's decision? Yes. Yes, I agree. Counsel, I know you're worried about your time, but I'm sure the Chief will give you some time for a rebuttal. I do also want to ask about the BIA's 2021 decision matter of SLH and LBL where they essentially reversed NIJ, who essentially treated traffic delays as per se, not exceptional. And they said that the record in that case showed that because snowstorm caused exceptional traffic and it was corroborated that it had to be considered and that there was not going to be a per se rule that traffic is never exceptional. And I don't see any indication in the agency, either at the IJ or BIA level here, of considering whether the traffic here was ordinary or exceptional. Yes, I think the agency decision here is entirely at odds with the agency's own analysis in SLH, and SLH offers a helpful example of how traffic delays can be considered just like any potential cause of non-appearance in assessing whether or not they are exceptional. I also note the government does not dispute SLH or take any issue with it. The government takes the position that traffic conditions caused by a snowstorm are somehow different or more exceptional, but it seems entirely arbitrary to me to distinguish between the situation in SLH and the situation that petitioners faced here. Thank you. May it please the Court. Drew Ensign, Deputy Assistant Attorney General for the United States. The panel majority's decision squarely contravenes the statutory standard that Congress adopted, which this Court should correct. The opinion does so in two ways. First, the standard that Congress adopted clearly requires causation. The extraordinary circumstances at issue must have caused the failure to appear. In the language of the statute, quote, the failure to appear was because of exceptional circumstances, end quote. Freestanding equitable considerations untethered from the cause of the failure to appear thus do not and cannot suffice. This Court should therefore repudiate language in its prior opinions that permits unconscionable results. Would you agree with your friend on the other side who says it doesn't really matter whether unconscionable results is sort of considered as a freestanding or independent factor, as maybe Hernandez-Golan suggested, because I think that you agree that motive can be a consideration and should be a consideration with respect to determining an exceptional circumstance. So could the unconscionable result go to motive under a totality? Quite possibly, Your Honor. I don't think that's presented here. Let me break that down in a couple steps, actually. And so I think, importantly, unconscionable results, unless they have a causal relationship to the failure to appear, cannot suffice. Full stop. You're done. If it has a causal relationship with the failure to appear, then it could potentially be relevant. I think the statutory standard has three components to it, and I think motive is going to be most relevant to one of them, as Judge Friedland was kind of getting into. I think the three components to satisfy the standard are, first, it has to have a causal relationship. Two, it has to be extraordinary, which is referring to severity. And Congress gives us a couple examples and says it has to be not less severe than those. And the third is that it has to be beyond the control of the alien. Counsel, under those three factors, why was it appropriate for the BIA to consider whether she had demonstrated she would have been entitled to relief if she had appeared? That has nothing to do with causation. Your Honor, I don't think it's appropriate to consider that. But they did consider that, so why wasn't that an abuse of discretion? Well, I don't think it's an abuse of discretion. I think it was responding to that argument and explaining why it wouldn't have mattered in the alternative, even assuming that that standard applied. And BIA was operating at a time when this court had at least dicta, arguably requiring it to do so. So I don't think the BIA can be faulted for responding to the very sort of concerns that may have motivated this court to go on bonk. So now we're on bonk. Can you tell us what you think the test should be? You've made it clear that you think the causation element. You've covered that. And I think you agree that the exceptional circumstances have to rise to the level, whatever that means. That is my word. I'm not poking fun at you. That's my paraphrase. Rise to the level of the enumerated list examples in the statute. And what about how do you define this third element, beyond the control of? I mean, I think that seems to be where we're packing in motivation. And I'm not sure that you're agreeing with that in response to one of my colleagues' questions. I don't think it's going to be relevant to that. I think that's looking at the relationship with the diligence of the petitioner and whether or not there's a failure of diligence on their part. And if so, they can't satisfy the extraordinary circumstances standard. Where I think motive is particularly relevant, and it's not presented here, but in a lot of cases, for example, when you're talking about sickness in the family, for example, there may be a question of the severity, and there may very well be a credibility question of whether or not, you know, did they really, were they really unable to show, or did they maybe not show because they didn't have a great claim anyway, and that, you know, and that may be part of it. But what I was asking you, Counsel, is whether or not it's relevant to the notion that the characteristic, I think, of the dropdown, what I'm calling the dropdown list of examples in the statute, is the characteristics of whatever the circumstance is, it has to be sufficiently severe, but it also has to have really been beyond her control. It seems to me that's where motivation comes in, and sometimes I hear you agreeing with me and sometimes not, so I'm just trying to figure out what you think the test is. I think that motive, to the extent that it's relevant, will perhaps almost always or always be relevant to credibility questions, and credibility questions, I think, are overwhelmingly going to be directed at the severity factor rather than beyond the control. Okay. Can I ask you about beyond the control? Yes. Because I guess I doubt that you really mean totally beyond the control, so here's a hypo. If someone is, like, going to the court, they're across from the court, the light turns green, they have a walk signal, they start walking and a car hits them and they're injured, put aside that injury is actually maybe one of the things in the statute, but you could say they could have avoided that if they, even though the light was green, really looked as someone racing through this red light, and yet they got hit. So it's in their control, but they're also injured and probably meet the statute. You don't really mean beyond your control fully, do you? I don't think it requires some superhuman level of diligence, but it certainly requires that it not be a result of your negligence, for example. Where it's your own negligence that causes your failure to appear, that clearly falls short of what Congress has required. So is the idea that you think that she was negligent for not allowing enough time to get there, or is the idea, she's not negligent for causing the car accidents. Could you just tease out for me exactly why these two car accidents, the cause, I think it's a two-hour delay, but if not, correct me. Exactly what is it, your position? Why are those car accidents not sufficiently severe, please? Your Honor, I think there's two things at issue here that independently would justify it under the facts here. One is that there was, this wasn't beyond her control, because as this Court recognized in the Arradondo case, and describing the Sharma case, where petitioners left, quote, left a little margin for error, end quote, that falls short of extraordinary circumstances. But how much would she have to have left? What's that? She left at 6.45 and arrived at 10.30. Would she have had to leave at 4 a.m. to get there on time? How much would she have had to allocate to provide the margin of error that you think is sufficient? Well, your Honor, I think the causal connection actually comes in here, importantly, in that respect. Because here, even in Petitioner's own telling, if their calculations were correct, it would have taken 90 minutes to reach the courthouse, and they would have had only 15 minutes to park, clear security, and find the courthouse. So let me tell you why I am troubled by your argument that the cushion of time is determinative of something that's beyond her control. So I think, as Judge Koh was alluding to here, and I think this came up in the argument with your friend on the other side's argument, which is that she was four hours late. So whether the cushion of time was 15 minutes or 30 minutes or an hour wouldn't have made any difference. If she had left two hours earlier, she still would have been late. So doesn't this really mean that diligence, that the cushion of time really goes to diligence, and that's sort of one of those factors? So you might look to whether or not she gave herself 15 minutes, an extra 15 minutes, or an extra hour or two hours, as part of sort of the overall totality, but it can't be determinative of something that is or is not beyond her control, right? Your Honor, I disagree. And let me explain why, and if I may also circle back and finish answering Judge Koh's question as part of that. I think it goes to two parts of the standard here. I think one is that it was not beyond her control because of the lack of diligence here, and I think it also has a causal relationship here because even in her own telling, she only had... Wait, counsel, you say her lack of diligence. Is she supposed to be clairvoyant? How is she going to know that there's going to be two major accidents that's going to cause a two-hour delay? How is she supposed to know that beforehand? Well, Your Honor, I think that goes to the causal thing, and in answering that, maybe I can answer all three of your questions. I think here, causally, she left herself only 15 minutes to park. What would have been the time she should have left? What was the sufficient cushion of time? It would have had to have been more than that because what happened here was even ordinary traffic would have caused her failure to appear. What if she had left only one hour before her hearing time, and which, by her own account, wouldn't have been enough time to get there, but she got to the courthouse and the judge was still on the bench? Could, under our case law, she be removed in absentia and forced to prove an exceptional circumstance? Your Honor, I think that actually is the import of your case law. You are sitting on bonk, but Arradondo has a rather categorical holding. What Arradondo says is traffic and parking trouble are circumstances. I'm not talking about traffic and parking problems. What I'm talking about in Perez — we have a case, Perez from 2008, that says that the agency cannot remove somebody in absentia if they are late to their hearing and the judge is still on the bench. The reason that I'm really troubled by this focus on the amount of time is because it doesn't really matter. If she had left with not sufficient amount of time and showed up at the courthouse and the judge was on the bench, she would have her day in court. If she had left two hours earlier, she would have still missed her hearing because of the traffic and the two major accidents on the road. So either you have this sort of mismatch between when a person can be removed in absentia and be forced to prove an exceptional circumstance in one case but not the other. Can I just add on that? With Perez, why should the number of cases and perhaps the complication of the cases that the immigration judge has on calendar that day be anything that is within the control of the petitioner? Right? If in this particular case the IJ had an additional case or two and was still in the courtroom, she would not have to prove exceptional circumstances. So how is it within her control, the number of cases and perhaps the complication of the cases that are on the judge's docket that day? Yes, Your Honor. So I think there's two pending questions before me. I'm going to really try my best to get both of those answered if I can. The first is as to causally why it mattered, why she only left 15 minutes. That meant that if traffic was even 20 percent worse than her calculation, which is a thoroughly everyday occurrence of life, it is in no way at all extraordinary, she wouldn't have made it on time and she would have been in default. So the fact that traffic might have been extraordinarily bad did not ---- Well, that's not entirely true because the IJ would have still been on the bench. Well, Your Honor, I think that's the second part of the question, too. But as to whether or not she would have arrived on time, even the most mundane, ordinary, slightly worse than average traffic would have caused her to not be there. And so the nature of the traffic did not cause her failure to appear on time. Now, it's true that this court in Perez has adopted a sort of grace period where if you arrive while the IJ is still on the bench, that is directed at a very different question of whether or not you failed to appear or not. Well, you're asking whether she exercised reasonable due diligence as one of the factors we should consider if she is reasonable to leave only 15 minutes cushion if you know you have this grace period. I'd be hard-pressed to say an attorney is not exercising reasonable due diligence just because they don't arrive at court two hours ahead of time. I understand that, Your Honor. While Perez certainly recognizes a grace period, there is no grace period on top of a grace period. This Court has never recognized that. It's never recognized, well, you would have made the grace period. You almost made the grace period. You know, here's what Justice Marshall has said about it. I don't think it's a grace period on top of a grace period if it's exceptional circumstances. And under the DIA's own precedent, exceptional traffic can be an exceptional circumstance. And so there is reasonable diligence plus an exceptional circumstance. Your Honor, she failed to appear. Thus, we are under the extraordinary circumstances. Perez carves out a limited exception to that. There is some arbitrariness built into that exception that this Court has created. It does mean that whether or not people are subject to the stringent standard does turn somewhat on the vagaries of how many other cases are pending and whether someone's the first case of the day or the last case of the day. I'm sure this Court has, you know, built that into its calculations. Perez is statutorily based. No, Your Honor. It is a—well, it purports to apply the statute, but in the government, in the view of the government, it does not have a statutory basis. Are you saying traffic per se can never be an exceptional circumstance? You're not, right? I mean, you cite a case of the BIA where they actually found that traffic was, in that instance, an exceptional circumstance. Well, Your Honor, this is a somewhat unusual circumstance because this Court appears to have adopted a rather categorical rule. I mean, what it said in Arradondo is traffic and trouble-finding parking standing alone do not— Okay. We're sitting on bunk. No, no. Actually, counsel— I think it should be categorical. What's that? Do you agree that it should not be categorical? We have not asked this Court to overrule that, and so we're not asking this Court to do it. Certainly— Counsel, I guess let me interrupt you. I'm sorry. But I just, when you reference the case, I want you to put the first word that you're missing out of Arradondo. It doesn't say traffic. What was the first word that it says? Your Honor, I don't have the case in front of me. Ordinary. Ordinary traffic is what it says. So when we talk about the case, that's the distinction here, that this was extraordinary. Isn't it the case that these two traffic examples are extraordinary? It's certainly worse than usual, Your Honor. But I think, as we've explained, it didn't play a causal role here. Even ordinary traffic— But that's a different issue. So if we have to clarify our standards, I had not even understood you to be arguing that we should adopt a standard that per se traffic—that per se traffic is never extraordinary. Are you saying that now? Your Honor, that's not the position the BIA has taken. I do read this Court's— What if we don't? I mean, why did Arradondo have talked about all these other factors and said ordinary traffic if we had a per se rule that really, really bad traffic with a snowstorm or the highway collapses in an earthquake, that isn't extraordinary? That's your position, that we couldn't even say that such—a snowstorm that just shut down the traffic for days wouldn't be enough? Your Honor, as you recognize, you are sitting on bonk, and if you don't read your case law that way, you should simply clarify that, and we recognize that— Setting aside the case law, because now I'm getting thrown off. I had understood the government's position to be that in determining whether exceptional circumstances exist under the statute, we should consider the totality of the circumstances. Has that changed? No, Your Honor, and— And yet the agency in this case cited to Arradondo, which as you just indicated, you believe, and I agree, that Arradondo is a case of ordinary traffic that has no other factors to consider for the totality, and that is the case that was cited by both the IJ and the BIA here when it concluded that the petitioner did not experience an exceptional circumstance, right? That is a correct description of what the BIA held, and so— So as a follow-up, and just to clarify the government's position, if the test is looking at the totality of the circumstances to determine whether the facts rise to exceptional circumstances, traffic—I'm not talking about the facts of this case, but extraordinary traffic issues could be one relevant consideration. Is that fair to say? I think that's a fair characterization of the BIA's process. Then the question is, in this case, are these facts extraordinary? I believe that's correct, Your Honor, and Arradondo may throw a bit of a wrench in that because it has some language that might be read differently, but I agree that that's— Why would Arradondo have talked about she failed to contact her lawyer and she— Arradondo didn't even talk about the only thing we need to talk about is traffic. It talked about a lot of things. It's like one factor in many. I'm not sure why you're reading it as a per se rule. Your Honor, I don't think that's necessary here, so let me focus elsewhere. That is how we have read that case, but I don't think any of this turns on this, and I don't think I need to depend on that. I agree with you that it wasn't case dispositive in Arradondo, and so—and I will also acknowledge that the BIA has precedent that suggests that extreme traffic, at least when paired with both diligence and extreme weather, could potentially suffice. And that BIA precedent is five years after Arradondo, right? That is correct, Your Honor. So clearly the BIA didn't understand Arradondo as imposing a per se rule. Your Honor, I'm not sure exactly how they read it, but I think it was clearly not an abuse of discretion here, and so— Do you think we should read the BIA decision in this case as applying a per se rule about traffic? Your Honor, I don't think it necessarily was, and I don't think you need to do so, and so I think certainly the language here depended in part on the lack of diligence by the petitioner and such that it wouldn't have made a difference in this circumstance. Isn't that really the issue here? It seems to me this would be a different case if she had not filed an affidavit saying that she was at fault. Then we'd be able to have this whole discussion about whether this met it, but why—I mean, how can we find—I mean, would there be an abuse of discretion if there wasn't that statement in the affidavit that she submitted or the declaration that she submitted? I don't believe so, Your Honor, but this certainly is a radically easier case because of that declaration. That declaration makes very clear that there was a lack of diligence here and that caused the failure to appear in this instance. It also renders the fact that even if traffic was extraordinarily bad, typical traffic of the sort that Arradondo recognized as not sufficient would have caused her to fail to appear. How do we—so what about extraordinary traffic? I mean, this is—it's very different in Idaho than what it is in Seattle than what it is in L.A. How do we figure that out and what discretion does the BIA have in that? Do we look at that as an abuse of discretion? Does the petitioner have to come in and say, well, here's what my GPS said and, you know, here's—I've looked at traffic studies and 90% of traffic reaches within a 10% variant. I mean, at what point do we say this is beyond their control? Well, Your Honor, a couple of responses to that. I mean, there are certainly going to be these line drawing exercises, and some of them may be tougher. This case is not remotely tough, but there may be tougher ones. And what guides this court is it's all reviewed under an abuse of discretion standard. So there will be a bound of reasonableness within which BIA will be upheld. There won't be bright line or perfect rules of, you know— But we have to know that the agency conducted that analysis, right? There has to be some indication that those factors were considered in making the determination as to whether one particular incident and one set of facts and circumstances are exceptional compared to another set, right? So here, I mean, I think as you conceded, the BIA cites to a case that you read to be a per se rule of unexceptionality for traffic. It is a case that has no other factors. And there's nothing in the record here in the BIA or IJ's decision that tells us that they grappled with the other parts of the declaration, including the photos, the news alert, the statements about meeting with the DHS officers in the past, the fact that her minor children would be separated from their father. There's a letter from him attached to the motion to reopen. How do we know that those things were all considered? Several responses to that, Your Honor. I think as an initial matter, the way that Arradondo could be viewed in different strengths. I don't think that the BIA's opinion relies on the sort of maximalist view of Arradondo that may have been troubling this Court. I think it relied on a general principle that traffic, as a general matter, will not constitute extraordinary circumstances. As to the loss of derivative benefits or the potential loss of derivative benefits for the minor children, that is not even alleged to have caused the failure to appear and thus does not have any relevance to the stringent standard that Congress has set. It cannot be part of the analysis because it does not satisfy the causal relationship. And I think that's the key thing. It can't even provide relief, right? What's that? It can't even provide ultimate relief. Even if we were looking at unconscionability, my understanding is the BIA looked at that and said the father's immigration status has nothing to do with their ability because how they entered the United States. That's absolutely correct, Your Honor, and that was also part of the BIA's decision. The BIA explained that under Section 1255, because they entered the country unlawfully and without inspection, they are not eligible for adjustment of status. So even if there were a potential loss of these benefits theoretically at issue and that was theoretically relevant to the extraordinary circumstances standard, which it is not, that simply isn't a factor that's present here because they're not eligible for it given their unlawful entry into the United States. Okay. Let me give you a traffic hypo. So there is a first crash that closes traffic from 4.30 a.m. to 9.00 a.m., and then just as they clear that first crash at 9.00 a.m., there's a second crash that involves multiple vehicles that also then closes the highway and multiple people are injured. They have to extract someone with the jaws of life. So when you have multiple hours of the lanes completely closed, would you consider that to be beyond ordinary traffic delay, congestion, when you're closing on a business day freeways for multiple hours between 4.30 a.m. and it doesn't say when it opened up, but, you know, the second accident was at 9.00 a.m.? Yes, Your Honor, and let me explain how I think that would play into the analysis. So I think what you've described is extraordinary and unusual. But that is the facts. Those are the facts here, right? I understand, as a hypothetical, I understand your hypothetical to at least be very close to the facts presented here. I think the way that would come in is if the alien in question had left a sufficient buffer that encountering merely bad traffic wouldn't have prevented them from getting there on time, but something truly extraordinary of a circumstance that is, like, you know, truly, truly rare, then that would present a very different set of circumstances. Perhaps that might satisfy the BIA standard. And this comes back to you. You're saying the 15 minutes was not enough of a buffer, even though the traffic was highly unusual and exceptional. So what, in your view, would have been enough, if not 15 minutes, as a reasonable person trying to arrive somewhere on time? You know, and I'll be interested in the answer because I'll be expecting every counsel from the government to be arriving that much ahead of their scheduled appearances. Your Honor, I think the facts of this case aren't even remotely close, so let me answer that first and then perhaps venture into some hypothetical land. Here, traffic that was even 20 percent worse than our calculations would have caused her to not appear. That is not remotely close to something that's the rule. But I think you said that here, you agreed with Judge Koh that that hypothetical, the facts, constitute something that seems exceptional, that they're out of the ordinary. It's not 20 percent more. This is something that is different than that. It's exceptional. And then I think you said, and it may have been the cause for her not to appear on time at the hearing, but still you go back to how much time she left herself as sort of being the determinative factor, at the end of the day, hindsight being 20-20, that we have to find that that's not exceptional. Is that what you're saying? Your Honor, no, I disagree with the premise of the question that we're agreeing that the cause is established there. What we're saying in particular on these facts is if your planning resulted in merely bad but not extraordinarily, you know, unprecedentedly bad traffic would have caused you to not appear, then the fact that traffic might have been extraordinarily bad does not have the causal relationship that Congress mandates. So when did you leave from D.C. to get to court today at 2.30? I left last night, Your Honor, on a 7 o'clock flight, and candidly that made me feel a little uncomfortable, but I had several backups planned. Well, we're just glad that Judge Sung isn't going to sanction you. Why? We have to see what time he left from his hotel to get to court and how much time he left to get through San Francisco traffic to account for potential accidents or street closures around the court building and whether there is an extra long line going through security. Your Honor, I deliberately stayed at a hotel close to this courthouse, so now not quite that close. I mean, doesn't this all come back? These are all interesting hypotheticals, but doesn't it all come back to a declaration that she submitted where she said she was at fault? Like, how could the BIA abuse its discretion when they relied on that? If she hadn't have said that, maybe we could have all these hypothetical discussions. But she said, I'm sorry, I was at fault. Can I ask you, what if she had said and left the night before and still ran into problems traffic-wise between where she was staying and the courthouse, and she said, I'm sorry, I should have left two days, or maybe earlier the next day. Does her admission that she was at fault for not coming in 48 hours earlier rather than 24 hours earlier enter into it, or do we look to see, wow, if she would have left at this time, it seems reasonable she would have gotten there, but for the extraordinary traffic circumstances? Your Honor, in that hypothetical, I don't think her admissions would be dispositive. In the case we have here, she's essentially admitting to negligence. In the hypothetical you opposed, she's admitting to extraordinary diligence. I think besides the fact that she said, I'm sorry, because it's a matter of human nature. I think we often apologize for things that are not actually our fault. In other words, is it a contrition versus admission? Your Honor, I think it is both here. I think the contrition may have been reflexive. It may have been genuine. I don't think it has any relevance here. I think the admission as to the underlying facts is dispositive here. Isn't the question whether the BIA abused its discretion in taking that, regardless of what we would have decided, but were they abused? I mean, in the Chief's example, it seems to me it would be an abuse of discretion to say, I'm going to rely on that, even though she left two days earlier. But here, I mean, it was 15 minutes. You could have had a parking problem. I mean, is that an exceptional circumstance if we have a parking problem? My point is I don't know how much we put into the fact that she apologized. That's my point. So if we don't put as much emphasis or any on that, then what are we looking at? And that was what I was trying to ask. But before, I just want to ask you, so you agree, it seems like that's what you're saying in your papers, we look at the totality of the circumstances in making this determination. Is that correct? That's correct, Your Honor, although I think Petitioners misapprehend the nature of the totality of the circumstances test. What a totality means is that if there's any evidence that has relevance to the actual standard established by Congress, you can consider it. So there's not sorts of relevant evidence that are categorically out of bounds. However, it does not mean that it is an equitable free-for-all that you can consider unconscionable results untethered from the actual standard that Congress has set. So in particular here, the potential loss of derivative benefits, which was more hypothetical than real here, cannot be considered because it didn't have a causal relationship. And if I might, that is the very important aspect to the government here. But you would also agree, then, the fact that she did not show eligibility for benefits also has no relevance to the causal relationship? I agree with that, Your Honor, and I think the BIA was setting that forward as a sort of alternative holding. Well, it says the traffic congestion coupled with the respondent's explanation that she miscalculated the time it would take to arrive at the court and a lack of showing that the immigration judge was still on the bench. Sorry. I lost it. Okay. She, in this case, it was the respondent's first hearing. She was not mistaken regarding the time, and she has not demonstrated she would have been entitled to relief had she appeared. Your Honor, there's other discussion in that same opinion, though, that I think recognizes – Not presented as an alternative. It's presented as a factor. Your Honor, I think Redding – In one sentence. In that sentence – It's just what we required, right? I mean, we required at the time a look of unconscionability. Yes, Your Honor. I mean, certainly there was dicta in multiple of this court's precedents that would have required them to do so, so it would be a little strange for this court to fault the BIA for following this court's precedents as they existed. But I think that underscores, too, the most important aspect of this case to the government and why we sought rehearing on Bonk. It is that consideration of unconscionable results untethered from the textual standard that Congress has adopted that is particularly problematic and that we would ask this court to repudiate dicta in its cases that seems to have suggested that much and return it to the actual textual standard that Congress has adopted. Thank you. Thank you, Your Honors. Counsel went over a minute 30, so I'll give you a total of 2 minutes and 30 seconds. Thank you. So Petitioner says that her calculation of time to arrive at the court was wrong because she didn't anticipate these two accidents. The government has now – Let me just parse out a couple of questions on this. We've heard it pitched as this was an apology. She said the main reason that I did not appear is because there was heavy traffic on the way to the court and because of my miscalculation of time of how long it takes to arrive to the court. Is that an apology? I think the discussion of the apology was focused on her apology on page 34.  But that first sentence that I read, that's not an apology. The portion that Your Honors is quoting says, because of my miscalculation of how long it takes to arrive at court, there were two major accidents on the way to court that morning, and as a result we were going very slow. You missed a period. She says, because of my miscalculation of time of how long it takes to arrive to the court. Well, but later on in the next paragraph she says, because of the accidents we were late. She also says that in the next paragraph, correct? Yes, she does. Am I right that she left at 6.45 for an 8.30 hearing?  She got there at 10.30? Yes. Right, so it took her three hours and 45 minutes to get there? Yes. All right. So it took her nearly between two and three times. She was two hours late. Yes. She got there at 10.30. She needed to be up there by 8.30. Yes. Okay, thank you. Now, the government has largely not discussed the two children as well. It says that they're virtually irrelevant because they haven't shown their eligibility for relief, but there can be no dispute that the children were not responsible for any calculation of the time to arrive. But how did they factor into the statutory standard? So the children do have a right to be heard at the hearing. They do have due process rights as well. I think it's relevant to considering whether there are exceptional circumstances, whether there are children. I think we started with the exceptional circumstances have to have caused her to fail to appear. Yes. Okay, so how do you get the children into that first step of the test? So I think consistent with the discussion that your honor was having with my friend on the other side, that the children go in part to the motivation for appearance and assessing the diligence that they showed. That's the third part, but that's not the causation standard. So I wasn't trying to give you a hard time. I'm just trying to make sure that I understand your analysis. Yes. Thank you. But so I think the children are relevant in that way. And I just want to stress that the government acknowledges here that the traffic was extraordinary. The government continues to cite Sharma and Arradondo, but those two cases are entirely distinguishable from this one. And that's my time, so I will leave it with that. Thank you very much, Ms. Munion, Mr. Ensign. I really appreciate your oral argument presentations here today. The case of Claudia Elena Montejo Gonzalez v. Pamela Bondi is now submitted, and we are adjourned. Thank you. All rise. This court's session stands adjourned.
judges: MURGUIA, CALLAHAN, CHRISTEN, NGUYEN, FRIEDLAND, NELSON, KOH, SUNG, THOMAS, MENDOZA, DESAI